Insular Mercantile Co., Plaintiff and Appellee, *v.* Francisco
Crespo Escalera, Defendant and Appellant.

No. 7984.   Argued December 6, 1939.—Decided July 19, 1940.

*Luis Mercader* for appellant.   *A. Torres Braschi* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Since 1922, Francisco Crespo Escalera, was the owner of
several parcels of land in the Municipality of Ciales near
the boundary line between Ciales and Orocovis, formerly
known as Barros.

Since 1887, these properties—or at least the one with
which we are now concerned—have been generally regarded
as being within the Municipality of Ciales, and since 1922
—if not since 1877—the taxes thereon have been paid in
Ciales.   We shall assume that prior to 1887 they were gen-

crally regarded as being within the Municipality of Barros and that they were so recorded in the Ponce Registry of Property.

Crespo mortgaged two of these properties to Ernesto Fernando Schlüter. They were described in the mortgage deed as being in the Municipality of Barros. Schlüter instituted a summary foreclosure proceeding in the District Court of Ponce and was the only bidder at the sale. For one of the properties, a parcel of 122 *cuerdas*, he bid $300; for the other, a parcel of 81 *cuerdas*, $250. These amounts were credited to Crespo. There was no transfer of money. Later, in order to cover the deficiency, Schlüter attached other properties belonging to Crespo. Finally he executed an instrument purporting a conveyance of the 122 *cuerdas*, the 81 *cuerdas*, and five other properties, together with an assignment of two mortgages to the Insular Mercantile Company, a corporation, by whom he was employed as its manager.

The corporation paid $300, the amount of Schlüter's bid at the foreclosure sale, for the 122 *cuerdas* and $250, the amount of Schlüter's bid at the foreclosure sale, for the 81 *cuerdas*. The amount paid for each of the other properties, and for each of the mortgages was much less than the actual value, as far as an idea as to such value can be gathered from the facts stated in the notarial instrument. The amount paid for all the land and the mortgages was only $1,500.

The Insular Mercantile Company brought the present action for unlawful detainer in the District Court of Ponce. It alleged that the parcel of 122 *cuerdas* described in its complaint was in the ward of Damián, Municipality of Orocovis, within the Judicial District of Ponce. It also alleged that Crespo was a tenant at will.

Defendant, in his answer, alleged (both as a demurrer and as a defense) want of jurisdiction because the property was actually in the Municipality of Ciales, and not in Oro-

covis, formerly known as Barros. The taxes were paid in Ciales. If, in the registry of property, it appeared as being in Barros (Orocovis), that, he alleged, was due to the fact that the present territory of Ciales had been at one time a part of Barros from which it was separated and became a separate municipality.

The district court (speaking of the unlawful detainer proceeding) held that this was not a jurisdictional question, but a question of venue which had been waived by defendant's failure to ask for a change of venue. *Sosa v. Manzano*, 36 P.R.R. 657. Appellant challenges the soundness of the decision in the *Sosa* case, but offers no satisfactory reason for an overruling of that case at this time.

Plaintiff introduced in evidence a tax receipt for the year 1936–37, wherein the property was described as being in the Barrio Pozas, Municipality of Ciales. Plaintiff also introduced a letter dated March 3, 1938, addressed to Crespo in Ciales stating that plaintiff had a prospective purchaser for "the property of 122 *cuerdas* in the Pozas ward of Ciales." Defendant moved to dismiss the action upon the ground that the district court was without jurisdiction in the unlawful detainer proceeding because it appeared from plaintiff's own evidence that the property was in Ciales. The court overruled this motion, and defendant took an exception.

If, as the court had already held, the question was not one of jurisdiction but of venue—the fact that plaintiff had paid taxes on the property as being within the Municipality of Ciales, and had referred to the same as the property of 122 *cuerdas* in the Barrio Pozas of Ciales did not convert the question of venue into a question of jurisdiction.

Defendant in his answer alleged that:

After the foreclosure sale, Schlüter had agreed with defendant to sell, and sold the property to defendant, whom he left in possession thereof, in consideration of a liquidation of the mortgage credit and interest. Later Schlüter, in order to frustrate that agreement, ex-

ecuted a simulated conveyance of the property to the plaintiff corporation of which he was a director or in which he was interested. This he did for the sole purpose of causing plaintiff to appear as an innocent purchaser, the fact being that Schlüter and plaintiff are one and the same. Defendant was in possession of the property by virtue of this agreement with Schlüter, not as a tenant at will as claimed by Schlüter through his double (*testaferro*), the self-styled plaintiff corporation.

From the stenographic record of Schlüter's testimony we take the following extract:

"And after those properties were awarded to you at the execution sale did you come to an understanding with Mr. Crespo?

"I gave him six months in which to do all he could to reimburse me, as shown by a letter that is there, and his reply to that, at the expiration of the six months, was that he was unable to get the money.

"Judge: Did he continue living on the property under the understanding you have mentioned?

"Witness: Your Honor. . . .

"Judge: According to that understanding that you mention, six months was its duration.

"Att'y Torres: Did he agree to get the money within those six months?

"To pay his debt.

"And in that way, to keep the property?

"But many times six months have elapsed and he has not paid."

The rest of Schlüter's testimony was, in substance, as follows:

The mortgage was on two properties situated, according to the instrument, in the Barrio Damián of Orocovis, within the Ponce Judicial District. After the foreclosure sale there was a deficiency. Witness had never seen the properties and did not know their value. Because of the deficiency, witness had to attach other properties which had not been sold. The correspondence referred to the deficiency.

Six years had elapsed since the expiration of the six-month period. After the expiration of that period, witness, on various occasions, had given his attention to the matter. Crespo had written

him that he would get the money from the A.A.A. and from the Government Rehabilitation Agency, and witness was waiting for him to raise the money,—not because there was any agreement. Later Crespo told witness that Mr. Morán was going to let him have the money. Morán went to Europe and nothing materialized. Crespo was still in possession of the property.

(On cross-examination):

Witness was employed by the plaintiff corporation as its manager. He had no stock. He was not an officer nor a director. According to the mortgage, the property of 122 acres was in the Barrio Damián. of Orocovis. It was recorded in the Ponce Registry of Property. Witness had never seen the property. Witness had written Crespo at one time asking him where the taxes were paid because the Barros collector had told witness that the property did not appear to be in Orocovis and witness wanted to pay the taxes. The property was found to be in Ciales. Witness made his remittance to Ciales,—paid the taxes in Ciales. The tax receipt was from Ciales.

Crespo testified in part that:

Witness claimed to be the owner of the property in controversy because it was his property. While he was sick, Schlüter had it sold at auction for a balance due on a mortgage. Later it was agreed that he would cede witness the properties because he always tried to appear as a man who was not trying to do harm. That was in 1932. In 1934, witness was very ill mentally. There was a hurricane in 1928 and another in 1932. Witness was paying well. He had paid $8,000 or $10,000, the indebtedness was $12,000 and the properties were sold for a note which was due. Witness, after he got well in 1934, told Schlüter that he was going to attack the sale; that two properties worth $10,000 could not be sold for $2,000. Schlüter said to witness: ''We will arrange matters, I will not take the property from you''. He was agreed. He was willing that witness should remain in possession of the property. The proof was that witness was still in possession. The agreement was that witness would pay.

In 1934, witness went with Don Pepe Morán, who had promised to let witness have the money—went to Schlüter's house and was trying and trying. ''I want that account in order to pay it, Morán comes to let me have the money at the bank.'' Witness did not pay because the account was not liquidated. Then Morán sailed. When

he returned, they went to Schlüter's house to obtain from him a liquidation of the account. The agreement was that he would return the property if witness would pay the account. Witness was still in the possession of the property. It was in the Municipality of Ciales.

There was a controversy between the two municipalities. Formerly the property was in the Municipality of Barros. That and other properties were in the Municipality of Barros. There was a division between Barros and Ciales in 1887. A survey was made in 1887. . Since 1887, the property had been in the Municipality of Ciales. Witness had purchased the property in 1920 or 1922. He had paid the taxes in Ciales. Everybody had regarded it as situated in Ciales, there was no doubt about it. Witness was still in possession of the property.

It was agreed that the testimony of three other witnesses for defendant, if they were placed upon the stand, would have been the same as that of Crespo as to the boundary line between the two municipalities.

Crespo testified on cross-examination that:

He was sixty-two years of age. The agreement with Schlüter had been "realized". Witness went three or four times to pay. Schlüter could not deny that witness went seven or eight times to pay him. Witness had not paid him. Since the foreclosure sale, witness had remained in possession.

Morán did not visit Schlüter. Recently "Don Ramón" went to see him. Previously witness had visited Schlüter four or five times. Morán remained in San Juan. He was going to let witness have the money. "Ultimately" Morán had visited Schlüter but "Don Pepe Morán had to talk with witness". It was he who was going to let witness have the money at the bank. Recently Morán after his return from Spain had visited Schlüter. Don Pepe Morán was going to let witness have the money in 1934. Three or four or five times witness had been waiting for Schlüter to liquidate the account in order that (Morán) might give witness the money. Morán "went" about 1936 "it might have been when Ramón went to Spain". Later Morán when he returned from Spain, was to let witness have the money. Witness had gone to Schlüter for the purpose of paying him and settling the account. "They" had never settled it. Witness had found a friend who would have furnished the money. Since 1934, witness had been after Schlüter for a statement of the account. He had been two or three times to obtain "a liquidation of the ac-

count". Witness had not paid because they had never come. to an agreement; Schlüter did not want to settle. That was why witness had not paid. Witness had not brought his action for an acounting "in the hope that an agreement would in the meantime be thus arrived at". That was why witness had not sued Schlüter. Then Morán had arrived "and we went three or four times". Only once while Morán was in Spain had witness written Schlüter stating that he could not obtain the money. Morán had sailed on a family mission. Obviously witness could not pay until he returned. As soon as Morán returned, witness went with Morán when he arrived from Spain.

At this point, the stenographic record reads:

"MR. SCHLÜTER: This year; not before.

"WITNESS: Not before? On several occasions you have refused to settle those accounts.

"ATT'Y TORRES: Why did you not deposit it in court? 'Because I could not dispose of it until the deed was ready to be assigned to the others. Do you think that money is thus obtained?"

Plaintiff did not offer any testimony in rebuttal.

The district judge found that, as shown by the letters admitted in evidence and copied in his statement of the case and opinion, there was no contract of purchase and sale nor any contract of any kind concerning the property "between Schlüter, the Insular Mercantile Co., and Crespo". If by this the judge meant that there was no agreement between Schlüter and Crespo, the finding, we think, was contrary to the evidence.

The letters referred to are: first, a letter from Schlüter to Crespo dated August 11, 1932; second, Crespo's reply, August 15, 1932; third, a letter from Schlüter to Crespo of September 14, 1933; fourth, Crespo's reply of September 19, 1933; fifth, a letter from the Insular Mercantile Co. to Crespo of November 30, 1937; and sixth, Crespo's reply of December 8, 1937.

Schlüter, in the first paragraph of his letter of August 11, 1932, informed Crespo that the day before he had bought the property at the foreclosure sale, and requested that

Crespo thereafter should abstain from any act of possession or of ownership. In the second paragraph he said that if Crespo was interested in the property, he (Schlüter) was disposed to accept payment of the debt and expenses of the foreclosure proceeding, since the only interest he had in the matter was to collect his money. Obviously, this voluntary offer implied a promise to reconvey the property upon payment of the debt and reimbursement of the expenses incurred. There was no mention of any time limit. Crespo, in his reply, stated: that the property sold at the foreclosure sale was fenced together with other property; that for two months or more he had not visited the property because he had been ill; that as soon as he was better, able to get out, he would see what could be done and would come to San Juan to see Schlüter. If this was not a tentative. acceptance of Schlüter's offer—conditioned, of course, on Crespo's ability to raise the money—it was converted into such an acceptance by subsequent events detailed in Crespo's uncontradicted testimony, corroborated in its essential features, by Schlüter's own statements and admission.

Schlüter, in his letter of September 14, 1933, stated: that the term of six months given Crespo after the last attachment was about to expire; that apparently Crespo had done nothing during the time that had elapsed, or at least had not reported anything; that Schlüter was paying interest on his debt to the bank, and the bank was demanding settlement. The letter closed with the request that Crespo should indicate what he could definitely do so that Schlüter might act in accordance with the instructions given him by the bank and so that they might see whether any practical arrangement could be made. Crespo in his reply said that: he had done everything possible to raise the money without having achieved any practical results; that the money could not be obtained anywhere; that he was awaiting the agricultural rehabilitation to see, if Schlüter was willing, whether they might not, with the Pozas group of properties,

obtain the total amount of the indebtedness; that if Schlüter would do him the favor, the matter could not be long delayed; that this was the only way to obtain the money; and that he hoped the bank would wait.

Schlüter's statement that this correspondence referred to the "deficiency" is not impressive. Certainly, none of the letters makes any reference to the "deficiency." Obviously, the "debt" referred to in the second paragraph of the first letter, was not the "deficiency." Schlüter did not mean that, since the only interest he had in the matter was to collect his money, he would be willing to accept payment of the "deficiency" and expenses of the foreclosure proceeding,—if Crespo was interested in the "property". It is not probable that Crespo would have been interested in the "property" if he had understood that Schlüter meant he would be willing to accept payment of the "deficiency" and the expenses of the foreclosure proceeding and at the same time keep the "property". Crespo, in his letter of September 19, 1933, would hardly have expressed the hope that he might be able to mortgage the "Pozas group of properties" and thereby obtain the total amount of the indebtedness if he had understood Schlüter to mean, in his letter of a year before, that if Crespo was interested in the property which Schlüter had purchased at the foreclosure sale, Schlüter would be willing to accept payment of the "deficiency" and retain the property.

The suggestion that Crespo had lost his option six years before the commencement of the unlawful detainer proceeding at the expiration of the six-month period mentioned in Schlüter's letter of September 14, 1933, comes too late. When the parties to an agreement by their acts, conduct, and tacit consent have extended a six-month time limit over a period of six years, and one of them, the holder of an option, has endeavored from time to time throughout the six years to exercise his option and to perform his part of the agreement, and has been prevented from so doing by evasive and

dilatory tactics of the other, then the latter can not successfully invoke the six-month time limit to deprive the holder of the option of his rights under the agreement.

. If Schlüter had told Crespo in 1933 or 1934 that he would not reconvey the property upon payment of the debt because Crespo had not exercised his option within the six-month period, it is not probable that Crespo would have persisted in his efforts to obtain from Schlüter some statement of the amount necessary to redeem the property.

If Schlüter is, as Crespo claims, the real plaintiff, he can not now be heard to say that his agreement with Crespo expired at the end of the six-month period, six years before his ostensible transfer of the property and the commencement of the present proceeding.

The letters of November 30, 1937, and December 8, 1937, read as follows:

"Mr. Francisco Crespo,
"Ciales, Puerto Rico.
"Dear Sir:

"As we have bought from Mr. Schlüter a piece of property which you had mortgaged to him, we would like to know from you who is in charge of said piece of property at present and we must advise you that we are on the point of closing a deal regarding such piece of property. If you are interested in it we hope you will let us know, but anyhow we want to be advised regarding the person you have put in charge of it.

"We hope you will favor us with an answer. We are,

"Yours truly,

"INSULAR MERCANTILE Co."

"Insular Mercantile Co.,
"San Juan.
"Gentlemen:

"I received your letter dated November 30 which I failed to answer at the proper time as I was kept busy out in the country.

"In regard to the piece of property to which you refer I am taking care of it together with somebody else there.

"Regarding the purchase if the terms are reasonable we might come to terms, provided the amount and mode of payment are agreed upon.

"Waiting for your answer, I am, Yours truly,

"(Signed:)    Francisco Crespo."

The letter of November 30, 1937, was apparently the first information received by Crespo as to the alleged conveyance of July 1937. It made no mention of the fact that Schlüter had conveyed to the Insular Mercantile Co. the parcel of 81 *cuerdas*. Up to the time of the trial it seems Crespo understood that Schlüter had sold this property to a young lady in Orocovis whom Crespo, after refusing to deliver possession, had described to Schlüter as "a human panther". Crespo also testified that he had been unable to ascertain from Schlüter whether or not he had sold the 81 *cuerdas*. If, as Crespo believed, the Insular Mercantile Co. was but another name for Schlüter, there was no reason why, upon receipt of the corporation's letter, his first step should have been an attempt to obtain from the corporation what he had been unable to obtain from Schlüter. All things considered, his cautious and non-committal reply to that letter was about as discreet as anything he could have said without the advise of counsel. In any event, it cannot be construed as a waiver or abandonment of his agreement with Schlüter. It does not contradict nor discredit his testimony.

If Crespo, after his acceptance of Schlüter's offer, by his repeated and unsuccessful attempts to perform his part of the contract was not the equitable owner of the property, he was at least entitled to remain in possession pending a settlement of the accounts and a reconveyance, or a failure upon his part to perform his contract after being given a reasonable opportunity. In any event, he was neither a lessee nor a tenant at will. Even though his claim, including the contention that the Insular Mercantile Co. was in fact

none other than Schlüter himself, be regarded as not fully established, it is at least supported by sufficient evidence to bring the case within the rule that where a conflict of title or other similar questions are involved, an unlawful detainer proceeding can not prosper.

The case has another and perhaps more serious aspect. If, as Crespo's testimony shows or tends to show, the mortgaged properties were in fact, at the time of the mortgage and thereafter, within the Municipality of Ciales, then the district court was without jurisdiction in the foreclosure proceeding, unless the fact that they were recorded in the Ponce Registry of Property and described in the mortgage as being within the Municipality of Barros, now Orocovis, be sufficient to take the case out of the general rule and bring it within an exception to that rule. That the case does not come within the general rule is by no means self-evident. Crespo's claim of continued ownership by reason of the absolute nullity of the foreclosure proceeding and subsequent conveyances and his contention that the Insular Mercantile Co. was not an innocent purchaser, are entitled to serious consideration, and the questions involved can better be determined in an ordinary action. A thorough investigation of the question as to whether or not the Insular Mercantile Co. was an innocent purchaser—putting out of view for the moment all other questions involved—would take a much wider range than is customary, practicable, or proper in a summary proceeding for unlawful detainer.

The judgment appealed from must be reversed and the action will be dismissed.

Mr. Justice De Jesús took no part in the decision of this case.